# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

DIADRA KISER, as Personal Representative
of the ESTATE OF THOMAS G. KISER,
Deceased,

          Plaintiff,

v.

MILL CREEK ENTERPRISES, INC., an
Oklahoma Corporation,

          Defendant.

Case No. CIV-07-256-RAW

## ORDER & OPINION

Before the court is Plaintiff's Motion for Summary Judgment [Docket No. 57]. Plaintiff filed her First Amended Complaint on August 27, 2007 seeking damages in excess of $75,000.00 for a single claim of breach of contract. According to Plaintiff, the parties entered a Stock Purchase Agreement on March 26, 2004, and Defendant materially breached that contract by failing to pay Plaintiff $100,000.00, failing to begin temporary mining operations, and failing to make additional payments due Plaintiff. On October 3, 2007, Defendant filed its Answer and three counterclaims – breach of contract, defamation, and interference with business relations.

Plaintiff seeks summary judgment on her breach of contract claim and all of Defendant's counterclaims. She seeks judgment in the amount of $1,335,000.00. She further maintains that attorneys' fees should remain reserved pending resolution of Plaintiff's status as a prevailing party. For the reasons delineated below, Plaintiff's motion is GRANTED.

**Stipulations**

The parties have listed the following stipulations in their Pretrial Order. Plaintiff listed the same in her motion, and Defendant listed them again in its response.

1. Plaintiff is a resident of the state of Florida.

2. Plaintiff is the widow of Thomas Kiser, and she is the Personal Representative of the Estate of Thomas G. Kiser.

3. Thomas G. Kiser died on February 18, 2004.

4. Defendant is an Oklahoma Corporation.

5. At all relevant times, Defendant had exclusive access to the Toro Mine, outside Demming, New Mexico.

6. Defendant did not perform a title search or any other due diligence on the Toro Mine Leases.

7. Prior to March 26, 2004, Defendant tested the perlite on the Toro Mine, outside Demming, New Mexico, and determined that the perlite was high quality.

8. The March 26, 2004 Stock Purchase Agreement is a valid, binding contract for Plaintiff's sale of 996,000 shares of Toro Mining & Materials, Inc. to Defendant.

9. Pursuant to the terms of the Stock Purchase Agreement, the purchase price Defendant was to pay Plaintiff for 996,000 shares of Toro Mining & Minerals, Inc. was $1,500,000.00.

10. Defendant has produced no evidence that it paid $500,000.00 toward the purchase of the Toro Mine prior to execution of the Stock Purchase Agreement.

11. Pursuant to the terms of the Stock Purchase Agreement, Defendant was to make an initial cash payment to Plaintiff in the amount of $325,000.00. Towards that initial cash payment,

Defendant received an $11,895.00 credit, as well as a loan in the amount of $100,000.00 to begin a "temporary mining program," as outlined in the Stock Purchase Agreement. This brought the total initial cash payment to $213,104.04.

12. Pursuant to the terms of the Stock Purchase Agreement, Defendant was to pay Plaintiff the $100,000.00 loan back to Plaintiff within 90 days at the rate of 7% APR until paid.

13. Pursuant to the terms of the Stock Purchase Agreement, Plaintiff, or her representatives, were to hold 250,000 shares of Toro Mining stock pending full payment of the $100,000.00 loan.

14. Pursuant to the terms of the Stock Purchase Agreement, upon execution of the Stock Purchase Agreement and Defendant's initial cash payment of $213,104.04, Plaintiff was to release the remaining stock of Toro Mining, along with various corporate documents and Toro Mining's corporate seal.

15. Defendant through Laura Corbin, released the $213,104.04 initial cash payment from escrow on or about May 14, 2004.

16. Plaintiff, through Jim Choate, then released Toro Mining's corporate documents and seal and all of its stock to Defendant, except for the 250,000 shares Choate retained pending Defendant's payment of the $100,000.00 loan.

17. Pursuant to the terms of the Stock Purchase Agreement, Defendant was to immediately begin the "temporary mining program," upon the initial cash payment.

18. Defendant never began any mining operations on the Toro Mine.

19. Pursuant to the terms of the Stock Purchase Agreement, there remained a balance on the Stock Purchase Agreement of $675,000.00 beyond the $100,000.00 loan.

20. Pursuant to the Stock Purchase Agreement, 30 days after the "temporary mining program" ceased (and permanent mining began), Defendant was to pay the remaining balance ($675,000.00) in 60 months at $3,500.00 per month at 7.0% APR. Any remainder was due at the end of the 60 months.

21. Pursuant to the terms of the Stock Purchase Agreement, Defendant was to pay $5.50 per ton of perlite toward the $100,000.00 loan and then toward the $675,000.00 remainder. Plaintiff retained $.50 perpetual royalty of the $5.50 per ton during Temporary Mining Operations and thereafter.

22. Pursuant to the terms of the Stock Purchase Agreement, upon its execution, Plaintiff was to receive a first priority lien on the mining claims of Toro Mining for the remaining balance due of $675,000.00.

23. Plaintiff retained a $.50 perpetual royalty of all mining.

24. Plaintiff's alleged defamatory statements to Ronald Atwood occurred on June 21, 2005 and July 6, 2005, respectively.

25. Defendant filed its counterclaims against Plaintiff for defamation and interference with business relations on October 3, 2007.

26. Defendant has not paid Plaintiff anything other than the initial cash payment toward the Stock Purchase Agreement.

27. Defendant could have produced 655,000 tons of perlite during 2004 through 2006, had mining operations begun as outlined in the Stock Purchase Agreement.

28. The amount of the $100,000.00 loan, with 7% APR interest to date, is $128,000.00.

29. The amount of the $675,000.00 remainder on the Stock Purchase Agreement, with 7% APR interest to date, is $922,000.00.

30. Since execution of the Stock Purchase Agreement, Defendant has attempted to sell the Toro Mine for $15,000,000.00.

## Claim & Counterclaims

Based on the stipulations or undisputed facts, in sections I.A. through I.C. of her motion, Plaintiff argues that the Stock Purchase Agreement was a valid, binding contract; that she should prevail on her breach of contract claim; and that Defendant's defenses to Plaintiff's breach of contract claim fail as a matter of law. Defendant does not dispute these portions of Plaintiff's motion, and for the reasons set forth in her motion, the court agrees – Plaintiff shall prevail on her breach of contract claim. The amount of damages will be discussed below.

Defendant also does not dispute Plaintiff's arguments in sections II.A. through II.E. of her motion, wherein she argues that all three of Defendant's counterclaims fail as a matter of law. Again, for the reasons set forth in her motion, the court agrees – Defendant's counterclaims fail.

## Damages

In section I.D. of her motion, Plaintiff requests judgment in the amount of $1,335,000.00. This amount represents the $1,120,000.00 purchase price plus $215,500.00 in royalties. Defendant

does not dispute that Plaintiff is entitled to contractual damages, but does dispute the requested royalties.

## Contractual Damages

Plaintiff's calculation of contractual damages is $1,120,000.00. That amount includes the $100,000.00 loan (with 7% APR interest to the date of the motion) equaling $128,000.00 and the $675,000.00 remainder on the Stock Purchase Agreement (with 7% APR interest to the date of the motion) equaling $992,000.00. Defendant does not dispute the contractual damages. Plaintiff is entitled to contractual damages in the amount of $1,120,000.00.

## Damages

Plaintiff's calculation of royalty damages is $215,500.00. According to the stipulated calculations, Defendant could have produced 655,000 tons of perlite from 2004 through 2006 had it begun mining operations pursuant to the Stock Purchase Agreement. Plaintiff notes that under the terms of the Stock Purchase Agreement, Defendant was entitled to apply $5.00 ($5.50 per ton, less $.50 royalty to Plaintiff) per ton to the $1,120,000.00 purchase price. Using the 655,000 ton projection from 2004 to 2006, Defendant would have paid off the purchase price, with interest, with 224,000 tons.

Plaintiff's calculation of royalty damages, $215,500.00, represents a $.50 royalty on the remaining 431,000 ton projection of mining through 2006. Defendant does not argue with Plaintiff's calculation, but argues that any royalties are speculative and should not be granted. The parties agree that a plaintiff may recover for loss of future or anticipated profits in a breach of contract action:

> 1) if the loss is within the contemplation of the parties at the time the contract was made, 2) if the loss flows directly or proximately from the breach – i.e., if the loss can be said to have been caused by the breach – and 3) if the loss is capable of reasonably accurate measurement or estimate.

Florafax Int'l, Inc. v. GTE Mkt. Res., Inc., 933 P.2d 282, 292 (Okla. 1997).

Defendant basically concedes that the first two prongs of Florafax have been met by the facts of this case. Defendant argues, however, that because no perlite was ever produced from the mine, any estimated loss is not capable of "reasonably accurate measurement or estimate," and is guesswork. The court believes that the terms of the Stock Purchase Agreement alone make clear that the first two prongs of Florafax have been met. The loss was within the contemplation of the parties at the time the contract was made, and it flows directly or proximately from the breach.

As to the third prong, Defendant has stipulated: "Defendant could have produced 655,000 tons of perlite during 2004 through 2006, had mining operations begun as outlined in the Stock Purchase Agreement." The court does not believe that Defendant can make such a stipulation and then argue that the loss is not capable of "reasonably accurate measurement or estimate." A reasonably accurate measurement or estimate has been stipulated. The third prong is satisfied. Plaintiff is entitled to royalty damages in the amount of $215,500.00.

### Attorneys' Fees

While the parties mention attorneys' fees, such fees are not at issue at this time, and the court will reserve its ruling on fees following a proper filing pursuant to Local Civil Rule 54.2. The court notes that given that the parties have stipulated that the Stock Purchase Agreement is a valid, binding

contract, the court will likely honor the provision that the contract be interpreted and construed according to the laws of New Mexico, including N.M. Stat. Ann. § 45-3-720, which provides:

> If any personal representative or person nominated as a personal representative defends or prosecutes any proceeding in good faith, whether successful or not, he is entitled to receive from the estate his necessary expenses and disbursements including reasonable attorneys' fees incurred.

If Defendant meant to suggest, however, that this language should be construed to mean that a Defendant is not liable for any attorneys' fees due and owing a successful representative of an estate, the court notes that it does not agree.

## Conclusion

In accordance with the rulings above, Plaintiff's motion [Docket No. 57] is hereby GRANTED. Judgment is hereby entered in Plaintiff's favor in the amount of $1,335,000.00, which represents the $1,120,000.00 purchase price plus $215,500.00 in royalties.

IT IS SO ORDERED this 8th day of September, 2008.

**Dated this 8th Day of September 2008.**

J4h4i0

Ronald A. White
United States District Judge
Eastern District of Oklahoma